APPENDIX C

MAP SHOWING

PORTION OF COLUMBIA GAS TRANSMISSION CORPORATION'S WAYNE STORAGE FIELD AND A 19.16 ACRE TRACT PRESENTLY OWNED BY FREDRICK D. JOHNSON

CLINTON TOWNSHIP    WAYNE COUNTY, OHIO

MARCH 5, 1985

**UNITED STATES of America**
**v.**
**57,261 ITEMS OF DRUG**
**PARAPHERNALIA.**

No. 3–87–0656.

United States District Court,
M.D. Tennessee,
Nashville Division.

March 11, 1988.

Joe B. Brown, U.S. Atty., Harold B. Mc-Donough, Asst. U.S. Atty., Nashville, Tenn., for plaintiff.

Robert T. Vaughn, Larry D. Woods, Nashville, Tenn., for defendant.

## MEMORANDUM

HIGGINS, District Judge.

On April 15, 1987, Contempo Products, Inc., (Contempo) filed civil action No. 3–87– 0292 against Ralph Whiteside, Bill Crane and the Department of the Treasury, Customs Service of the United States of America (the Customs Service). Contempo alleged that Mr. Whiteside, Mr. Crane, and the Customs Service seized Contempo's property, three shipments of ceramic cigarette holders, ceramic pipes and water pipes, in violation of Contempo's due process rights. Contempo simultaneously filed a motion for a preliminary injunction. Jurisdiction was alleged on the basis of 28 U.S.C. § 1331.

On April 27, 1987, Mr. Whiteside, Mr. Crane and the Customs Service filed a motion to dismiss, challenging the subject matter jurisdiction, in personam jurisdiction and sufficiency of process and alleging a failure to state a claim. Then, on April 30, 1987, the plaintiff filed an amendment to the complaint, adding the United States as a party defendant and alleging jurisdiction on the basis of the Tucker Act, 28 U.S.C. § 1346(a) and the All Writs Act, 18 U.S.C. § 1651. On May 21, 1987, a hearing was held on the motion to dismiss. At that time, Contempo's counsel dismissed all claims against the Customs Service, leaving the two individual customs agents and the United States as defendants in civil action No. 3–87–0292. On June 18, 1987, the Court entered an order denying the motion to dismiss. On the same day, the Court entered an order consolidating the preliminary injunction for hearing with the trial on the merits.

On July 13, 1987, Mr. Crane and Mr. Whiteside filed a motion to dismiss the individual defendants on the ground of qualified immunity. On August 19, 1987, the Court entered an order denying that motion.

Also, on August 19, 1987, the United States (the Government) filed the action before this Court, civil action No. 3–87–0656, *United States of America v. 57,261 Items of Drug Paraphernalia, Including Ceramic Pipes, Holders and Water Pipes,* for forfeiture of the merchandise, which is also the subject of civil action No. 3–87–0292, *i.e.,* the three shipments of ceramic

cigarette holders, ceramic pipes and water pipes which were imported by Contempo and later seized by the Government.

On August 26, 1987, the defendants in civil action No. 3–87–0292 filed a motion to dismiss or stay the trial of that action until judgment was entered in this action. Then, on August 27, 1987, Mr. Whiteside and Mr. Crane filed a notice of appeal from the order entered in civil action No. 3–87–0292, denying their motion to dismiss on the basis of qualified immunity. They also filed a motion to stay further proceedings against them in civil action No. 3–87–0292, while their appeal was pending.

A hearing on the motion to stay the trial of civil action No. 3–87–0292 was held on August 28, 1987. At the hearing, the attorneys agreed to stay civil action No. 3–87–0292 and to proceed to trial on this forfeiture action, No. 3–87–0656. This action was tried on August 31, 1987, September 1, 1987, and September 3, 1987, without the intervention of a jury.

For the reasons set forth in this memorandum, the Court finds that the three seized shipments of cigarette holders, ceramic pipes and water pipes are drug paraphernalia as defined by 21 U.S.C. § 857. The Court further finds that these ceramic cigarette holders, ceramic pipes and water pipes were properly seized pursuant to 19 U.S.C. § 1595a(c). Therefore, the defendant, 57,261 items of drug paraphernalia, is condemned and forfeited to the Government.

## I.

In early 1987, a shipment of ceramic pipes and ceramic cigarette holders, manufactured by the Niki Glass Company, Inc., of Japan, was imported into the United States by Contempo. Although the shipment was unloaded at the port of Seattle, Washington, the items were kept in sealed containers until they reached Nashville,

Tennessee, which served as the port of entry.

On February 25, 1987, Customs agents in Nashville were alerted by the Customs Service national computer that items with the tariff number of the items imported by Contempo might be prohibited items of drug paraphernalia as defined by 21 U.S.C. § 857, a provision of the Anti–Drug Abuse Act of 1986.[1]

On February 26, 1987, Customs agents in Nashville examined the ceramic pipes and ceramic cigarette holders which made up the initial shipment imported by Contempo. Samples of those items were sent to the Customs Service Regional Counsel's Office in New Orleans, Louisiana. On March 2, 1987, Customs agents in Nashville received a copy of the Anti–Drug Abuse Act of 1986. Then, on March 5, 1987, Customs agents went to the offices of Mr. V. Alexander, the import broker for Contempo, and informed him that the shipment of ceramic pipes and cigarette holders was being detained while a determination was made as to whether these items were drug paraphernalia imported in violation of the Anti–Drug Abuse Act. At that time, the Customs agents were informed that two additional imported shipments of similar items were expected to arrive in Nashville shortly. The import broker provided the agents with copies of the invoices for the two subsequent shipments. The invoices showed that one of those shipments consisted of water pipes imported from Japan, while the other shipment consisted of ceramic water pipes and ceramic cigarette holders and was similar to the shipment which had already arrived.

Customs special agent Jerry Owensby, who had ten years' experience as an agent for the Drug Enforcement Administration, was sent to observe the environment in which Contempo sold the detained items. Mr. Owensby went to Contempo's offices

---

1. P.L. 99–570. 100 Stat. 3207 (1986).

on McNally Drive in Nashville, Tennessee, and was told by the receptionist that he could not examine the products in their showroom because he was not a retail dealer but that he could visit Contempo's retail store, Jean Marie's,[2] on Elliston Place in Nashville. Mr. Owensby proceeded to visit and observe the Elliston place store. He then reported his observations to Mr. Ralph Whiteside, the Port Director for U.S. Customs, Nashville.

Agent Owensby reported that he saw a plastic marijuana plant in the receptionist's office at Contempo's offices. He also reported that Contempo's retail store sold many products, such as the ceramic pipes and cigarette holders which were contained in the shipment, as well as water pipes, scales, mirrors, straws and razors, which he believed were intended for use with controlled substances. Mr. Owensby told Mr. Whiteside that Contempo's retail store appeared to be a "head" shop, a store which sells drug paraphernalia to drug users. Mr. Owensby also informed Mr. Whiteside that, in his opinion, based on his experience in drug law enforcement, the ceramic pipes, ceramic cigarette holders and water pipes were used exclusively for introducing controlled substances, particularly marijuana, into the body.

On March 18, 1987, Mr. Whiteside, during a telephone conversation with Attorney Mary Cupp, from the Regional Counsel's Office, and Attorney Joe Taranto, a Fines, Penalties and Forfeitures Officer, also from the Regional Counsel's Office, discussed whether the shipments should be seized. He was advised by Ms. Cupp and Mr. Taranto that the items in the shipments did qualify as drug paraphernalia and that they could be seized and forfeited. The Regional Counsel's Office advised Mr. Whiteside that he should proceed to seize and forfeit the shipments pursuant to 19 U.S.C. § 1595a(c), another provision of the Anti–Drug Abuse Act of 1986.

Mr. Whiteside considered the information that he had received from Ms. Cupp, Mr. Taranto, Mr. Owensby and others and decided to commence forfeiture proceedings.

On March 19, 1982, the items in the first shipment were seized and forfeiture proceedings were commenced. On that date, Mr. Whiteside sent notice to the V. Alexander Company that the shipment was being seized.

The second shipment which contained water pipes arrived on March 20, 1987. Mr. Whiteside sent agents to inspect the shipment and instructed them that if the shipment matched the invoice furnished by the import broker, the shipment was to be seized for forfeiture. The shipment did match the invoice, and the agents seized the second shipment on March 20, 1987.

The third shipment, which contained ceramic pipes and ceramic cigarette holders identical to those contained in the first shipment, arrived on March 26, 1987. Again, Mr. Whiteside sent Customs agents to inspect the shipment and instructed them that if the contents mated the invoices furnished to them by the V. Alexander Company, the shipment was to be seized for forfeiture proceedings. The contents of the shipment matched the invoice, and the agents seized the third shipment on March 26, 1987.

---

2. The name for this store has since been changed to the Elliston Place Pipe and Tobacco Shop. The ownership of the shop, however, has not changed. At trial, Mr. Rowland testified that Contempo did not own this retail store. The evidence showed, however, that Mr. Rowland was the president of both Contempo and the retail store and that the other officers of the retail store were also associated with Contempo. In addition, the evidence showed that Contempo and the retail store were both owned by trusts which had the same settlor and the same trustee. In light of these facts and the fact that Mr. Owensby was informed by a Contempo employee that the store was Contempo's retail outlet, the Court will consider the store as if it were Contempo's retail store. In addition, because the store has changed names during the course of events leading to this action, the Court will, for the purposes of clarity, refer to the shop as Contempo's retail store.

All three shipments were combined into one seizure for the purposes of the forfeiture proceedings, which were commenced by the Customs Regional Office in New Orleans, Louisiana. Contempo was notified of the seizure by the Customs Office and filed a claim to the seized property. The proceedings for forfeiture were then commenced in this Court.

## II.

Contempo contends that the ceramic cigarette holders, ceramic pipes and water pipes are not drug paraphernalia as defined by 21 U.S.C. § 857, which provides:

(a) Unlawfulness

It is unlawful for any person—

(1) to make use of the services of the Postal Service or other interstate conveyance as part of a scheme to sell drug paraphernalia;

(2) to offer for sale and transportation in interstate or foreign commerce drug paraphernalia; or

(3) to import or export drug paraphernalia.

(b) Penalties

Anyone convicted of any offense under subsection (a) of this section shall be imprisoned for not more than three years and fined not more than $100,000.

(c) Seizure and forfeiture

Any drug paraphernalia involved in any violation of subsection (a) of this section shall be subject to seizure and forfeiture upon the conviction of a person for such violation. Any such paraphernalia shall be delivered to the Administrator of General Services, General Services Administration, who may order such paraphernalia destroyed or may authorize its use for law enforcement or educational purposes by Federal, State, or local authorities.

(d) Definition of "drug paraphernalia"

The term "drug paraphernalia" means any equipment, product, or material of any kind which is primarily intended or designed for use in manufacturing, compounding, converting, concealing, producing, processing, preparing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance in violation of the Controlled Substances Act (title II of Public Law 91–513). [21 U.S.C.A. § 801 *et seq.*] It includes items primarily intended or designed for use in ingesting, inhaling, or otherwise introducing marijuana, cocaine, hashish, hashish oil, PCP, or amphetamines into the human body, such as—

(1) metal, wooden, acrylic, glass, stone, plastic, or ceramic pipes with or without screens, permanent screens, hashish heads, or punctured metal bowls;

(2) water pipes;

(3) carburetion tubes and devices;

(4) smoking and carburetion masks;

(5) roach clips: meaning objects used to hold burning material, such as a marijuana cigarette, that has become too small or too short to be held in the hand;

(6) miniature spoons with level capacities of one-tenth cubic centimeter or less;

(7) chamber pipes;

(8) carburetor pipes;

(9) electric pipes;

(10) air-driven pipes;

(11) chillums;

(12) bongs;

(13) ice pipes or chiller;

(14) wired cigarette papers; or

(15) cocaine freebase kits.

(e) Matters considered in determination of what constitutes drug paraphernalia

In determining whether an item constitutes drug paraphernalia, in addition to all other logically relevant factors, the following may be considered:

(1) instructions, oral or written, provided with the item concerning its use;

(2) descriptive materials accompanying the item which explain or depict its use;

(3) national and local advertising concerning its use;

(4) the manner in which the item is displayed for sale;

(5) whether the owner, or anyone in control of the item, is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products;

(6) direct or circumstantial evidence of the ratio of sales of the item(s) to the total sales of the business enterprise;

(7) the existence and scope of legitimate uses of the item in the community; and

(8) expert testimony concerning its use.

(f) Exemptions

This section shall not apply to—

(1) any person authorized by local, State, or Federal law to manufacture, possess, or distribute such items; or

(2) any item that, in the normal lawful course of business, is imported, exported, transported, or sold through the mail or by any other means, and primarily intended for use with tobacco products, including any pipe, paper, or accessory.

Contempo attempted to establish through its witnesses, Mr. Benjamin Rapaport, an expert on tobacco use and tobacco smoking devices, Mr. Takefumi Niki, the President of Niki Glass Co., Ltd., and Mr. Richard Rowland, the President of Contempo, that the items in the three seized shipments are primarily intended for use with tobacco and are, therefore, exempt from the provisions of 21 U.S.C. § 857 in accordance with 21 U.S.C. § 857(f). Mr. Rapaport testified that ceramic pipes, ceramic cigarette holders and water pipes, like those contained in the seized shipments, are devices which have been used throughout history for smoking tobacco products. Mr. Rapaport also testified that these items are part of a new trend in the tobacco industry; he stated that the water pipes are becoming popular because they provide the least hazardous means of tobacco inhalation and that the small ceramic pipes are becoming popular among women and people who wish to smoke less. Mr. Rapaport also stated that such items are sometimes purchased by collectors of smoking devices, a hobby which he says is becoming more common. Mr. Rapaport further noted that items similar to the ceramic cigarette holders, ceramic pipes and water pipes in the shipments are displayed at the Retail Tobacco Dealers Association trade shows. Finally, Mr. Rapaport opined that the ceramic cigarette holders, ceramic pipes and water pipes, are primarily intended for use with tobacco.

Mr. Niki, the President of the company that manufactures the ceramic pipes and ceramic cigarette holders contained in the seized shipments, testified that he manufactured these items for use with tobacco. Mr. Richard Rowland then testified that Contempo imports the ceramic cigarette holders, ceramic pipes and water pipes for use with tobacco. He pointed out that these items are, in fact, marketed with descriptive literature which expressly states that they are intended for use with tobacco products. He further testified that Contempo's Elliston Place retail store carries these products for use with tobacco products, such as natural tobacco. Mr. Rowland also testified that the products sold by the Elliston Place retail store that Mr. Owensby identified as drug paraphernalia were sold for use with legitimate products such as snuff, natural tobacco, and vitamins, and were not sold for use with controlled substances.

The Government, however, provided substantial and convincing evidence that the primary use, in this country, for items like the ceramic cigarette holders, ceramic pipes and water pipes contained in the seized shipments is to introduce controlled substances into the body. Mr. William Hopkins, a former New York City policeman with experience in undercover work, who has participated in research conducted in New York City about the methods of using controlled substances, Mr. Howard Morris, an agent for the Tennessee Bureau of Investigation who specializes in the investigation of narcotics cases, and Mr. Phillip Taylor, a police officer with the Metropolitan Nashville Police Department who specializes in narcotics investigations, all testified that they had seen items like the seized

items used frequently and exclusively for the purpose of inhaling controlled substances, primarily marijuana. All three of these experts opined that these items were intended for the purpose of inhaling controlled substances.

In addition, Mr. Hopkins, Mr. Morris, Mr. Taylor, Mr. Owensby and Mr. Tim Harden, a tobacconist, testified that there are numerous factors which make the items in this case particularly suited to the inhalation of controlled substances and not to the inhalation of tobacco products. The bowls in the seized ceramic pipes are very small and will not hold enough tobacco to satisfy the average tobacco smoker. However, much smaller amounts of marijuana are needed to obtain the desired results of smoking marijuana. Therefore, these ceramic pipes are suitable for the average marijuana smoker. In addition, the pipes are easily washable and will permit a marijuana smoker to wash out the dark, sticky residue which is generated when marijuana is smoked. Furthermore, the pipes are equipped with a metal screen which permits marijuana to be smoked without being drawn into the mouth of the person smoking it. Mr. Tim Harden, the tobacconist, testified that a metal screen such as those in these ceramic pipes, would not be conducive to smoking tobacco products because it would cause condensation and create a wet smoke, and because it would make the already small bowl even smaller. Finally, some of the ceramic pipes have a hole in the bowl with a removable rubber stopper. That hole, known in the street vernacular as a carbureter hole, permits a marijuana smoker to inhale and fill his lungs with the marijuana smoke. The carbureter hole is not useful to tobacco smokers because the tobacco smoker does not seek to fill his lungs the way a marijuana smoker does.

According to these witnesses, the ceramic cigarette holders are also particularly suited to smoking marijuana. They are easily washable to permit the marijuana smoker to wash away the sticky resin left by burning marijuana. Moreover, they are conical in shape and are, therefore, particularly useful for holding hand-rolled cigarettes, a form in which marijuana is frequently consumed, but are not useful for holding conventional commercially-rolled cigarettes, a form in which tobacco is frequent consumed. Finally, the cigarette holders permit the smoker to consume the entire cigarette, a practice common among marijuana smokers because of the cost of marijuana, but which is not common among tobacco smokers. Items such as these, which permit a marijuana smoker to smoke a marijuana cigarette which has become too small to hold, are described in the street vernacular as roach clips.

Finally, these witnesses also testified that the water pipes are also particularly suited for smoking marijuana. Marijuana burns much better than tobacco, and the water cools the marijuana smoke. Although water pipes are used for smoking tobacco in other countries, they are not used for smoking tobacco in the United States because tobacco in this country is cured and processed and is, therefore, not so strong as to require filtering. In addition, several of the water pipes confiscated had more than one opening to allow more than one person to smoke the burning substance at the same time. This is a practice common among marijuana smokers, but not among tobacco smokers. Mr. Hopkins and Mr. Harden did concede that the water pipes in the seized shipments have wooden bowls which are more suitable for tobacco than marijuana, but testified that these bowls are easily exchanged for bowls of other substances.

At trial, Mr. Owensby also testified about his site visit to Contempo's Elliston Place retail store. Mr. Owensby testified that, in addition to tobacco products and tobacco pipes, the retail store sold water pipes, small ceramic pipes, ceramic cigarette holders, roach clips, pornographic pipes, hashish pipes, straws, razor blades, cocaine vials, cocaine spoons and scales. Mr. Owensby conceded that some of the items were displayed with literature indicating that they were manufactured for use with tobacco and snuff but testified that, in his experience, all these items are associated with the drug culture and are used in conjunction with controlled sub-

stances. Mr. Owensby further testified that he believed that most of the items sold by the retail store were drug paraphernalia. Mr. Morris, who had visited the Elliston Place retail store on a number of occasions also testified that, in his opinion, the retail store is a "head" shop selling drug paraphernalia, such as roach clips, cocaine spoons, cocaine vials, cocaine mirrors and cocaine kits.

■ In an *in rem* civil forfeiture proceeding, pursuant to 19 U.S.C. § 1595a, the Government must prove that there is probable cause to believe that the items in question are subject to forfeiture under that provision. The burden then shifts to the claimant who must prove that the items are not subject to forfeiture. *United States v. "Monkey,"* 725 F.2d 1007, 1010 (5th Cir.1984). A showing of probable cause is made if there is a reasonable ground, supported by less than prima facie evidence but more than mere suspicion, for the belief that the items are subject to forfeiture. *Id.*

■ In this case, the Government is required to show probable cause for its belief that the items in question are drug paraphernalia. The Court finds that the Government more than met its burden. In making the determination to seize the ceramic pipes and the ceramic cigarette holders for the purpose of forfeiture, Mr. Whiteside had the benefit of (1) 21 U.S.C. § 857, which specifically names ceramic pipes and roach clips as possible items of drug paraphernalia, (2) the advice of attorneys with the Customs Service who had examined the ceramic pipes and ceramic cigarette holders and determined that they were drug paraphernalia, (3) the opinions of agents, including Mr. Owensby, familiar with drug use and drug paraphernalia, who had examined the ceramic pipes and ceramic cigarette holders and opined that they were drug paraphernalia and (4) the opinion of Mr. Owensby, who had visited Contempo's office and Contempo's retail store, and opined that the items contained in the three shipments were sold in a "head" shop.

The decision to seize the shipments was made on March 18, 1986, two days before the shipment of water pipes arrived in Nashville, on March 20, 1986. Therefore, the decision to seize the water pipes was made before the Customs officials had seen and inspected those pipes. However, in making the decision to seize the water pipes, Mr. Whiteside had (1) the benefit of 21 U.S.C. § 857, which specifically names water pipes as a possible item of drug paraphernalia, (2) the opinion of Mr. Owensby, who had visited Contempo's offices and Contempo's retail store, and opined that the items contained in these shipments were sold at a "head" shop and (3) the opinion of Mr. Owensby that some of the items sold in Contempo's retail store, including the water pipes, were drug paraphernalia.

The Court concludes that the Government had much more than a mere suspicion that all three of the items, the ceramic pipes, ceramic cigarette holders, and water pipes, were drug paraphernalia and had more than sufficient probable cause to initiate these forfeiture proceedings.

The Court further finds that the claimant had failed to meet its burden of proving that the seized items are not drug paraphernalia. Mr. Rapaport provided information about the history and traditional uses of these items, about their collectability, about their suitability for tobacco, and about their potential uses. However, Mr. Rapaport provided no substantial or convincing evidence to refute the testimony of numerous expert Government witnesses that in their experience, in this country, these items are used primarily for the inhalation of controlled substances. This is also true of Mr. Niki's testimony. Although Mr. Niki testified that he manufactures the ceramic pipes and cigarette holders for use with tobacco and that in Japan such items are used for smoking tobacco, Mr. Niki had no knowledge of how such products are used in this country. The Court gives little credit to Mr. Rowland's self-serving testimony.[3] However, even

**3.** The Court notes that Mr. Rowland testified that he had no knowledge that Manitol, a baby

Mr. Rowland, while testifying that he imported these products for use with tobacco and that these products were suitable for use with tobacco, failed to provide any credible evidence to refute the Government's contention that in today's society these products are used solely for inhaling controlled substances.

The Court has considered all the relevant criteria set forth in 21 U.S.C. § 857(e), including the descriptive material included with the seized items, the manner in which the items were displayed for sale at Contempo's retail store, the fact that Contempo's retail store sold legitimate tobacco products, the scope of the legitimate uses of the items in the community, and the expert testimony concerning the items' use, in determining whether these items are drug paraphernalia as defined by 21 U.S.C. § 857. The Court finds that the proof overwhelmingly establishes that the primary use, in this community, for ceramic pipes, ceramic cigarette holders and water pipes like those in the seized shipments is to introduce controlled substances into the body. The Court further finds that there are minimal, if any, legitimate uses for such items in this community. The Court concludes, therefore, that in this country these items are intended for use with controlled substances and are drug paraphernalia as defined by 21 U.S.C. § 857.

### III.

■ Contempo further contends that even if these items are drug paraphernalia as defined by 21 U.S.C. § 857, the shipments are not subject to seizure under 19 U.S.C. § 1595a(c), a general civil forfeiture provision, because 21 U.S.C. § 857 contains its own criminal forfeiture provision, 21 U.S.C. § 857(c). 19 U.S.C. § 1595a(c) provides:

(c) Any merchandise that is introduced or attempted to be introduced into the United States contrary to law (other than in violation of section 1592 of this title) may be seized and forfeited.

While 21 U.S.C. § 857 provides:

(c) Seizure and forfeiture

Any drug paraphernalia involved in any violation of subsection (a) of this section shall be subject to seizure and forfeiture upon the conviction of a person for such violation. Any such paraphernalia shall be delivered to the Administrator of General Services, General Services Administration, who may order such paraphernalia destroyed or may authorize its use for law enforcement or educational purposes by Federal, State, or local authorities.

Contempo argues that 21 U.S.C. § 857 provides the exclusive method for the forfeiture of items which are imported into this country in violation of 21 U.S.C. § 857(a).

Both 21 U.S.C. § 857 and 19 U.S.C. § 1595a(c) were enacted as part of the Anti–Drug Abuse Act of 1986. The Anti–Drug Abuse Act of 1986 is an omnibus bill and, therefore, there is little legislative history which deals specifically with either of the provisions at issue in this case. However, it is clear that Congress intended to enact a comprehensive law, designed to strike at drug use through all available means. Mr. Quillen, a Representative from Tennessee, described the bill as follows:

H.R. 5484, the Omnibus Drug Enforcement, Education and Control Act of 1986, is a comprehensive bipartisan response to the severe substance and drug abuse problem which afflicts our country ...

The bill provides new funds and new weapons for the war on substance and drug abuse and drug related crime. It is a major step forward in our national effort to turn the tide against the drug-pushers and drug traffickers who have for years flooded the country and sold

laxative, which was sold in Contempo's retail store, is used as a cutting agent for cocaine. However, Mr. Morris, a government witness, testified that Manitol is commonly used for diluting cocaine. In addition, Mr. Rowland did not offer any testimony that would explain why Contempo's retail store, which Mr. Rowland

contends is a legitimate tobacco shop, offered Manitol for sale. Moreover, the Court cannot conceive of any logical reason for a tobacco store to carry a baby laxative such as Manitol. Therefore, the Court finds that Mr. Rowland's credibility is suspect.

them at great profit to corrupt, injure and kill our people.

This bill is a tough bill. I believe it signals the beginning of a forceful counteroffensive against the drug underworld and this is a counteroffensive we must win ...

Drug dealers, drug traffickers, drug users, beware. This Congress means business and the passage of this measure and this rule will bring *all the efforts* of this Federal Government into play to do what must be done to save lives and to eradicate this cancer which is growing and growing upon us. (emphasis added)

H.R. 5484, 99th Cong., 2nd Sess., 132 Cong. Rec. H6520 (1986). One of the weapons which the Congress relies upon in its war against drugs is the U.S. Customs Service. As Mr. Quillen expresses, one of the highlights of the bill is that it "strengthens the U.S. Customs drug enforcement capability." *Id.*

The legislative history makes it clear that Congress also intended to level an attack on the drug paraphernalia industry. Mr. Levine, a Representative from California, who introduced the amendment, which became codified as 21 U.S.C. § 857, stated:

The drug paraphernalia industry both glamorizes the use of illegal drugs and contributes to the problem of drug abuse ...

The open sale of drug paraphernalia misleads many young Americans to believe that drugs are acceptable to use. Advertisements in catalogs touting the paraphernalia ignore the serious consequences of drug abuse-health risks, addiction, progression to stronger drugs— and instead sell the idea that drug use is a normal and acceptable activity. A further danger, again especially for young people is the idea that if drug paraphernalia can be openly sold ... then society is not serious about enforcing drug laws, that the health risks are not really so great and that the legal consequences are not serious.

H.R. 5484, 99th Cong. 2d Sess, 132 Cong. Rec. H6656 (1986). Mr. Rockefeller, a Senator from West Virginia, also discussed the problem of the sale of drug paraphernalia:

To the extent that we are unsuccessful in interdicting the supply of drugs, we have to make the distribution and sale of them as difficult as possible and one of the gaping holes in the existing law is that, ironically, as local ordinances have succeeded in shutting down "head shops" —that is those stores in which drug paraphernalia is sold—it has remained possible for those who wish to maintain their profit in the sale of these items to do so by shipping their products interstate, even using the mails to do so. This legislation contains as one of its important points the fact that it was very closely adapted to the model act adopted by the Drug Enforcement Administration, a mail order drug paraphernalia control act, which will outlaw the sale and shipment of drug paraphernalia, these items which will enhance or aid in the use of dangerous controlled substances.

S. 2878, 99th Cong., 2nd Sess., 132 Cong. Rec. S13758 (1986).

The Congress which enacted the provisions of the Anti–Drug Abuse Act of 1986 clearly intended to use all available methods to crack down on drug-related business, including the drug paraphernalia business. The U.S. Customs Service provided Congress with a valuable tool to use in pressing its war against drugs. Congress apparently recognized the usefulness of this tool and enacted provisions which utilized the forfeiture powers of the U.S. Customs Service. Two of the provisions which provided for forfeiture were the general provision of 19 U.S.C. § 1595a(c) and the specific provision of 21 U.S.C. § 857(c).

One of the most basic rules of statutory construction is that where two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed Congressional intention to the contrary, to regard each as effective. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984). Neither 19 U.S.C. § 1595a(c) nor 21 U.S.C. § 857(c) contain any explicit limitation with respect to the

other. 19 U.S.C. § 1595a(c) provides broad seizure authority for *any* merchandise imported contrary to law. Its only limitation concerns violations of 19 U.S.C. § 1592. By comparison, 21 U.S.C. § 857 contains a criminal penalty provision which includes forfeiture. This provision requires forfeiture upon a conviction of a violation of 21 U.S.C. § 857(a). However, it does not contain any language making its provisions the exclusive remedy. Although the statute does not specifically provide for forfeiture unrelated to criminal action, it does not exclude the possibility of a separate and individual civil forfeiture.

The courts have recognized that civil and criminal forfeiture provisions which apply to the same acts can co-exist as alternative sanctions. *One Lot Emerald Cut Stones v. United States*, 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972) and *United States v. Dunn*, 802 F.2d 646 (2d Cr.1986). In cases where Congress had provided both a criminal and civil sanction, the courts have held that the Government may choose which of those sanctions it may seek to impose. In *One Lot Emerald Cut Stones v. United States, supra.*, the Supreme Court permitted the Government to seek forfeiture of one lot of emerald cut stones pursuant to 19 U.S.C. § 1497, which provided for the civil forfeiture of undeclared items, even though the claimant had been indicted, tried and acquitted of charges of violating 18 U.S.C. § 545, the criminal forfeiture provision for undeclared items, which contained its own criminal forfeiture provision. The Court held that Congress may impose both criminal and civil sanctions respecting the same act or omission and allowed the Government to seek civil forfeiture even after it had failed to meet its burden of proof in its efforts to pursue a criminal conviction and a criminal forfeiture.

In *United States v. Dunn, supra.*, the Second Circuit considered the relationship between civil and criminal forfeiture provisions. In that case, Mr. Dunn was brought to trial on the charge of possessing cocaine with intent to distribute. The United States had applied for the criminal forfeiture of two sums of currency—$4,000 and

$28,500—which had allegedly been tendered by Mr. Dunn to Drug Enforcement Administration agents. Mr. Dunn was convicted and the jury found that the $4,000 was subject to forfeiture but that the $28,500 was not. Mr. Dunn filed a motion for a new trial which was granted by the District Court and affirmed by the Appellate Court. While the order granting a new trial was being appealed, the Government instituted civil forfeiture proceedings against the sum of $28,500 pursuant to 21 U.S.C. § 881. Mr. Dunn moved to enjoin such action. The District Court granted Mr. Dunn's motion for a permanent injunction. The Government appealed and the Appellate Court reversed the District Court. The Appellate Court found that it was not the intent of Congress that the remedies of criminal and civil forfeiture be mutually exclusive and permitted the government to pursue a civil forfeiture.

In this case, there is no indication that Congress intended the criminal forfeiture provision of 21 U.S.C. § 857(c) to be the exclusive provision for the forfeiture of drug paraphernalia imported into this country contrary to law. The civil forfeiture provision of 21 U.S.C. § 1595a(c) does not conflict with the criminal forfeiture provision of 21 U.S.C. § 857(c). In fact, these provisions compliment one another. The provisions permit the U.S. Customs Service to use both civil and criminal forfeiture powers to combat the influx of drugs, and those items which encourage and enhance drug use, into this country.

The Court concludes that the provisions of 19 U.S.C. § 1595a(c), which provide for the forfeiture of any merchandise that is introduced or attempted to be introduced into the United States contrary to law, is applicable to drug paraphernalia, as defined by 21 U.S.C. § 857, introduced into this country in violation of 21 U.S.C. § 857(a). The Court has already determined that the seized items are drug paraphernalia, as defined by 21 U.S.C. § 857. Therefore, the Court finds that these items were properly seized in accordance with 19 U.S.C. § 1595a(c). These 57,261 items of drug paraphernalia are hereby condemned

and forfeited to the United States of America.

## IV.

Contempo also raises several constitutional claims. First, in its Answer, Contempo contends that the government instituted these forfeiture proceedings under an unconstitutional statute as alleged in *Contempo Products, Inc., v. Ralph Whiteside, et al.*, Civil Action No. 3–87–0292. As stated above, Civil Action No. 3–87–0292 is a separate action which was stayed by the agreement of the parties. The Court rejects Contempo's attempt to incorporate by reference the allegations made in Civil Action No. 3–87–0292 in its answer in this separate action. Therefore, the Court will not address the issue of the alleged unconstitutionality of the statutes at issue, 21 U.S.C. § 857 and 19 U.S.C. § 1595(a).

Second, in its Answer, Contempo contends that the substantive federal statutes are unconstitutional because the plaintiff has not followed the proper forfeiture procedure. The issue of whether the plaintiff followed the proper procedure in instituting this civil *in rem* forfeiture proceeding is a matter of statutory construction and does not give rise to a constitutional claim. The issue of statutory construction has already been addressed.

Finally, in its Post-trial Brief, the defendant has made hypothetical arguments concerning the unconstitutionality of 21 U.S.C. § 857 and 19 U.S.C. § 1595a(c) as applied to a hypothetical retailer. The Court finds it unnecessary to address constitutional challenges based on hypothetical situations which are not pertinent to this action.

For the reasons stated above, the Court need not address the constitutional challenges raised by Contempo.

An appropriate order will be entered.

### ORDER

In accordance with the memorandum contemporaneously filed, the Court finds in favor the plaintiff and against the defendant. Accordingly, the defendant, 57,261 items of drug paraphernalia, including ceramic pipes, holders and water pipes, is hereby condemned and forfeited to the United States of America and shall be delivered into the possession of the District Director of Customs, New Orleans, Louisiana, for disposition according to law.

It is so ORDERED.