869 F.2d 955
 UNITED STATES of America, Plaintiff-Appellee,
v.
57,261 ITEMS OF DRUG PARAPHERNALIA, etc., (88-5320), Defendant,
Contempo Products, Inc., by and through its president
Richard K. Rowland (88- 5320), Claimant-Appellant.
CONTEMPO PRODUCTS, INC., Plaintiff-Appellee,
v.
Ralph WHITESIDE and Bill Crane (87-6018), Defendants-Appellants.
 Nos. 88-5320, 87-6018.
 United States Court of Appeals,
Sixth Circuit.
 Argued Oct. 18, 1988.
Decided March 14, 1989.
Rehearing and Rehearing En Banc Denied May 10, 1989.
 
 Joe B. Brown, U.S. Atty., Nashville, Tenn., Harold B. McDonough, Jr. (argued), Nashville, Tenn., for defendants-appellants.
 Larry D. Woods (argued), Woods and Woods, and Robert Thomas Vaughn (argued), Nashville, Tenn., for plaintiffs-appellees.
 Before MERRITT, MARTIN and MILBURN, Circuit Judges.
 MERRITT, Circuit Judge.
 
 
 1
 The two "drug paraphernalia" cases before us on appeal arise from government seizure of shipments of a large quantity of ceramic pipes, water pipes and cigarette holders brought into the United States from Japan by Contempo Products, Inc. Customs agents, working with the DEA, seized these items in Nashville prior to delivery to Contempo in early 1987. They made the seizure under the remedial provisions for civil forfeiture found in the customs statute, 19 U.S.C. Sec. 1595a(c) ("merchandise ... introduced in United States contrary to law ... may be seized and forfeited"), in combination with Sec. 857(a) of the 1986 statute making it "unlawful for any person ... to import or export drug paraphernalia." 21 U.S.C. Sec. 857(a).[1] The government did not use the remedy of criminal forfeiture provided in Sec. 857(c) of the drug paraphernalia statute.
 
 I.
 
 2
 In No. 88-5320, a civil forfeiture action under the customs statute, Contempo's contentions are as follows:
 
 
 3
 1. Section 857 is unconstitutionally vague, or overbroad, because it can be extended, and in this case is being extended, to tobacco pipes used for innocent smoking of regular tobacco.
 
 
 4
 2. Even if constitutional, Sec. 857 was misapplied on the facts by District Judge Higgins because the ceramic products shipped into the country were not "primarily intended or designed for use in ... introducing into the human body a controlled substance," as defined by Sec. 857(d).
 
 
 5
 3. Even if Sec. 857 is constitutional, and even if the shipments in question constitute "drug paraphernalia" subject to forfeiture, Sec. 857(c) of the 1986 statute, a specific criminal forfeiture section, provides the government's only forfeiture remedy and by implication prevents the use of the civil in rem forfeiture remedy for imported articles found in Sec. 1595a(c) of the customs statute.
 
 
 6
 We find none of these three arguments persuasive.
 
 A. Constitutionality
 
 7
 The Supreme Court has upheld against the same kind of constitutional challenge a similar local ordinance outlawing drug paraphernalia. In Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc., 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982), the Court held:
 
 
 8
 Flipside also argues that the ordinance is "overbroad" because it could extend to "innocent" and "lawful" uses of items as well as uses with illegal drugs. Brief for Appellee 10, 33-35. This argument seems to confuse vagueness and overbreadth doctrines. If Flipside is objecting that it cannot determine whether the ordinance regulates items with some lawful uses, then it is complaining of vagueness. We find that claim unpersuasive in this preenforcement facial challenge. See infra, at 497-504 [102 S.Ct. at 1193-1196]. If Flipside is objecting that the ordinance would inhibit innocent uses of items found to be covered by the ordinance, it is complaining of denial of substantive due process. The latter claim obviously lacks merit. A retailer's right to sell smoking accessories, and a purchaser's right to buy and use them, are entitled only to minimal due process protection. Here, the village presented evidence of illegal drug use in the community. App. 37. Regulation of items that have some lawful as well as unlawful uses is not an irrational means of discouraging drug use. See Exxon Corp. v. Governor of Maryland, 437 U.S. 117, 124-25, [98 S.Ct. 2207, 2213-14, 57 L.Ed.2d 91] (1978).
 
 
 9
 The hostility of some lower courts to drug paraphernalia laws--and particularly to those regulating the sale of items that have many innocent uses, see, e.g., [Flipside, Hoffman Estates, Inc. v. Village of Hoffman Estates ] 639 F.2d 373, 381-383 ( [7th Cir.] 1981); Record Revolution No. 6, Inc. v. City of Parma, 638 F.2d 916, 928 (CA6 1980), vacated and remanded, 451 U.S. 1013 [101 S.Ct. 2998, 69 L.Ed.2d 384] (1981)--may reflect a belief that these measures are ineffective in stemming illegal drug use. This perceived defect, however, is not a defect of clarity. In the unlikely event that a state court construed this ordinance as prohibiting the sale of all pipes, of whatever description, then a seller of corncob pipes could not complain that the law is unduly vague. He could, of course, object that the law was not intended to cover such items.
 
 
 10
 455 U.S. at 497 n. 9, 102 S.Ct. at 1192 n. 9. The case of Record Revolution No. 6, Inc. v. City of Parma, Ohio, 638 F.2d 916 (6th Cir.1980) (invalidating on vagueness grounds a similar local ordinance), relied upon heavily by Contempo and amici, the American Pipe League and the National Association of Tobacco Distributors, is no longer good law after Hoffman. The Supreme Court in the above quotation specifically rejected our decision in Record Revolution. The Court has now vacated that decision also. See 456 U.S. 968, 102 S.Ct. 2227, 72 L.Ed.2d 840 (1982), on remand, 709 F.2d 534 (6th Cir.1983).
 
 
 11
 The Hoffman case is squarely on point. Like the ordinance at issue in Hoffman, the statute at issue here is not invalid on its face. It is clear that the federal statute may not be applied under its terms to items intended for innocent use. The statute requires intent. It does not leave open the question of whether the statute criminalizes innocent use, as Contempo and amici seem to argue. The explicit intent requirement saves the statute from this claim of vagueness.
 
 
 12
 Under the terms of Sec. 857(d), the 1986 statute may only be applied to items "primarily intended or designed" for drug use. The statute requires an intent to distribute the items for drug use. The person to whom the statute is being applied, here the importer, must have knowledge that there is a strong probability that the items will be used in this way. The statute thus creates a scienter requirement. If the items are not intended for drug use, the statute does not create criminal liability or subject the goods to forfeiture.
 
 
 13
 Our reading the statute to impose a knowledge requirement is the same reading as that given to the model drug paraphernalia act drafted for enactment by state and local governments, on which the federal act was based. See, e.g., Levas and Levas v. Village of Antioch, Ill., 684 F.2d 446, 450 (7th Cir.1982) (guilty knowledge requirement contained in model act); Tobacco Accessories and Novelty Craftsmen Merchants Ass'n of Louisiana v. Treen, 681 F.2d 378, 383-85 (5th Cir.1982) (same). See also Judge Raggi's recent opinion upholding Sec. 857 against a similar vagueness challenge, United States v. Main Street Distributing, Inc., 700 F.Supp. 655 (E.D.N.Y.1988). Like automobiles, boats and airplanes subject to forfeiture when used in the drug trade, drug paraphernalia become subject to forfeiture when the knowledge or intent element is present.
 
 
 14
 Contempo and amici seem to rely on the following argument: the act of possessing goods capable of both culpable and innocent uses may not be made unlawful, and subject the goods to forfeiture, until the goods are actually used unlawfully. Since it is conceivable that the goods may in the end be used lawfully by some, the law may not make the lawfulness of possession turn on the possessor's knowledge of their likely future use. This argument does not reflect the current state of the law. Many acts otherwise lawful are made unlawful on the basis of the actor's state of mind regarding future conduct--for example, possession of a firearm with intent to facilitate commission of unlawful acts, 18 U.S.C. Sec. 231 (transporting firearm "having reason to know" it will be used in civil disorder); use of the mails with intent to defraud, 18 U.S.C. Sec. 1341; and travel in interstate commerce "with intent to" do certain illegal acts, 18 U.S.C. Sec. 1952. The Constitution permits the law to criminalize otherwise lawful steps which are preliminary to the commission of a crime, using intent as the distinguishing element, rather than wait for the completed crime, just as the common law criminalized attempts and certain otherwise innocent possessory acts. See Clark & Marshall, Crimes 202-17, 455 (1958); Fletcher, Rethinking Criminal Law 197-205 (1978) (discussing possession offenses that turn on the actor's state of mind).
 
 
 15
 It is important to insist, however, that the requisite element of intent must be clearly demonstrated by the proof in the case when a statute makes the lawfulness of a preliminary step or possessory act turn on a particular state of mind. We turn, therefore, to Judge Higgins' findings of fact.
 
 B. Application of the Statute to the Facts
 
 16
 In a comprehensive opinion concisely reciting the evidence witness by witness, Judge Higgins found that "in this country these items are intended for use with controlled substances." United States v. 57,261 Items of Drug Paraphernalia, 705 F.Supp. 1256, 1264 (M.D.Tenn.1988).
 
 
 17
 The trial was a battle of experts. Ten witnesses testified. Judge Higgins based his findings on the testimony of four narcotics enforcement officials and a civilian expert in tobacco products. They testified that the ceramic pipes, cigarette holders and water pipes are "used frequently and exclusively for the purpose of inhaling controlled substances, primarily marijuana." Id. at 1262. Contempo does not appear to dispute the qualifications of the witnesses to testify as experts on this subject.
 
 
 18
 The five witnesses detailed a number of factors which make the items unsuitable for smoking regular tobacco but suitable for smoking marijuana: for example, the extremely small bowls of the ceramic pipes equipped with metal screens and "carburetor holes" in the bowl; the conical shape of the cigarette holders which permits hand-rolled cigarettes to be entirely consumed; and multiple holes in the water pipes allowing more than one person to smoke at the same time. They also testified that marijuana smokers follow the custom of using these items, but regular tobacco smokers do not.
 
 
 19
 The record demonstrates that the Court did not err in finding that these items are associated exclusively with the inhalation of drugs in the American drug culture. Possession or importation of a large quantity of such items for distribution, in itself, raises an inference of guilty knowledge. The most devastating evidence of Contempo's guilty knowledge, however, came when Mr. Owensby, a knowledgeable expert, testified from personal observation about the items sold in Contempo's retail store in Nashville. The store sold "coke spoons," "coke vials," "coke straws," and substances known to be used primarily for cutting and diluting cocaine, as well as many other items associated with the use of drugs. The District Court concluded that Contempo's retail outlet was a "head shop" which sold drug gear and equipment. From all of these circumstances, the Court made a reasonable inference that Contempo had knowledge that the shipment would be used in the drug trade.
 
 
 20
 Thus, the statute on its face, and as applied, is valid; the evidence is sufficient; the District Court correctly interpreted the element of intent found in Sec. 857(d); and we find no reason to set aside the judgment of civil forfeiture entered by the District Court on these grounds.
 
 
 21
 C. Exclusivity of the Forfeiture Provision of Sec. 857(c)
 
 
 22
 Contempo's last argument is that Sec. 857(c), providing for "seizure and forfeiture upon the conviction of a person" for an offense under Sec. 847(a) (emphasis added), is the exclusive method of forfeiture of drug paraphernalia. Contempo makes no argument that there were procedural defects in the civil forfeiture proceeding, or that the burden of persuasion was allocated improperly.
 
 
 23
 Although the parties advise us that there is no case authority or legislative history on the specific issue of whether Sec. 857(c) preempts the application of Sec. 1595a(c) to imported drug gear, application of the general rule to this issue poses no difficulty. Judge Higgins' analysis is correct:
 
 
 24
 One of the most basic rules of statutory construction is that where two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed Congressional intention to the contrary, to regard each as effective. Ruckelhaus v. Monsanto Co., 467 U.S. 986, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984). Neither 19 U.S.C. Sec. 1595a(c) nor 21 U.S.C. Sec. 857(c) contain any explicit limitation with respect to the other....
 
 
 25
 The courts have recognized that civil and criminal forfeiture provisions which apply to the same acts can co-exist as alternative sanctions. One Lot of Stones v. United States, 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972) and United States v. Dunn, 802 F.2d 646 (2d Cir.1986). In cases where Congress had provided both a criminal and civil sanction, the courts have held that the Government may choose which of those sanctions it may seek to impose. In One Lot of Stones v. United States, supra, the Supreme Court permitted the Government to seek forfeiture of one lot of emerald cut stones pursuant to 19 U.S.C. Sec. 1947, which provided for the civil forfeiture of undeclared items, even though the claimant had been indicted, tried and acquitted of charges of violating 18 U.S.C. Sec. 1545, the criminal forfeiture provision for undeclared items, which contained its own criminal forfeiture provision. The Court held that Congress may impose both criminal and civil sanctions respecting the same act or omission and allowed the Government to seek civil forfeiture even after it had failed to meet its burden of proof in its efforts to pursue a criminal conviction and a criminal forfeiture.
 
 
 26
 United States v. 57,261 Items of Drug Paraphernalia, 1265-1266.
 
 
 27
 Moreover, we note that the purposes of the civil and the criminal forfeiture provisions are quite different. The customs forfeiture statute aims to prevent the importation of goods deemed to be unlawful, and, we believe, incorporates by reference Sec. 857 and its definition of drug paraphernalia. It is well established that the full panoply of Fourth Amendment protections does not apply to imports inspected at the border. Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973). Once drug paraphernalia have entered the country, of course, their owners have all the procedural protections of the criminal forfeiture statute, backed up by the full force of the Fourth Amendment. But the existence of those more ample protections within the United States does not foreclose Congress from deciding that it will impose a less protective forfeiture scheme at the border. Further, there is no reason for applying less protective seizure and forfeiture rules to imported drug gear than to any other unlawfully imported goods. It would be anomalous for imported cars which do not meet our exhaust or safety requirements to be subject to civil forfeiture but for imported drug gear to be subject to the more stringent criminal provisions reserved for domestic goods.
 
 
 28
 Thus, the two statutory forfeiture remedies are not mutually exclusive. Accordingly, the judgment of the District Court in No. 88-5320 is affirmed.II.
 
 
 29
 The second case on appeal, No. 87-6018, was brought by Contempo against the government agents who seized the shipments. Contempo brought the case after the physical seizure of the goods but before the government actually filed its forfeiture action in court. Contempo sought an injunction against the seizure and damages against the agents.
 
 
 30
 The only question before us on this appeal concerns qualified immunity from liability for damages: are the agents entitled to qualified immunity because in effecting the seizure they did not violate "clearly established law" under the principles set out in Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), Mitchell v. Forsyth, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), and Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)?
 
 
 31
 Uncertain of the facts and the law applicable to the new drug paraphernalia statute, Judge Higgins declined to rule on the pleadings on the qualified immunity issue. He apparently wanted to hear more facts and to postpone a definitive ruling on qualified immunity until after he had heard the government's forfeiture action. Government counsel took an immediate Anderson v. Creighton interlocutory appeal on behalf of its agents from the court order declining to rule on the pleadings on the qualified immunity issue.
 
 
 32
 The case is in a different posture before us on appeal than it was before Judge Higgins. We now have the benefit of his ruling and of our ruling on the merits on the government's forfeiture action. The facts are known. Neither Judge Higgins nor this court has found any illegality in the seizure and forfeiture of the shipments. We have upheld the constitutionality of Sec. 857. We have agreed with the District Court's application of Sec. 857 to the facts of the case. We have agreed that the civil forfeiture provisions of Sec. 1595a may be used to effectuate the seizure and forfeiture of imported drug paraphernalia and that criminal forfeiture under Sec. 857 is not the exclusive procedure for such items.
 
 
 33
 No purpose would now be served by a remand to the District Court for application of the doctrine of qualified immunity. It is obvious at this stage that the doctrine applies to protect the agents from damages because we have found that they not only did not violate a "clearly established law"--they violated no law at all. They acted properly under a constitutional statute to effectuate a civil forfeiture under the customs statute.
 
 
 34
 Accordingly, in light of our ruling in No. 88-5320, the order in No. 87-6018 on qualified immunity is reversed and the case remanded with instructions to dismiss the claim against the defendants for damages.
 
 APPENDIX
 
 35
 Sec. 857. Use of Postal Service for sale of drug paraphernalia
 
 
 36
 (a) Unlawfulness
 
 
 37
 It is unlawful for any person--
 
 
 38
 (1) to make use of the services of the Postal Service or other interstate conveyance as part of a scheme to sell drug paraphernalia;
 
 
 39
 (2) to offer for sale and transportation in interstate or foreign commerce drug paraphernalia; or
 
 
 40
 (3) to import or export drug paraphernalia.
 
 
 41
 (b) Penalties
 
 
 42
 Anyone convicted of an offense under subsection (a) of this section shall be imprisoned for not more than three years and fined not more than $100,000.
 
 
 43
 (c) Seizure and forfeiture
 
 
 44
 Any drug paraphernalia involved in any violation of subsection (a) of this section shall be subject to seizure and forfeiture upon the conviction of a person for such violation. Any such paraphernalia shall be delivered to the Administrator of General Services, General Services Administration, who may order such paraphernalia destroyed or may authorize its use for law enforcement or educational purposes by Federal, State, or local authorities.(d) Definition of "drug paraphernalia"
 
 
 45
 The term "drug paraphernalia" means any equipment, product, or material of any kind which is primarily intended or designed for use in manufacturing, compounding, converting, concealing, producing, processing, preparing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance in violation of the Controlled Substances Act (title II of Public Law 91-513). [21 U.S.C.A. Sec. 801 et seq.] It includes items primarily intended or designed for use in ingesting, inhaling, or otherwise introducing marijuana, cocaine, hashish, hashish oil, PCP, or amphetamines into the human body, such as--
 
 
 46
 (1) metal, wooden, acrylic, glass, stone, plastic, or ceramic pipes with or without screens, permanent screens, hashish heads, or punctured metal bowls;
 
 
 47
 (2) water pipes;
 
 
 48
 (3) carburetion tubes and devices;
 
 
 49
 (4) smoking and carburetion masks;
 
 
 50
 (5) roach clips: meaning objects used to hold burning material, such as a marihuana [sic ] cigarette, that has become too small or too short to be held in the hand;
 
 
 51
 (6) miniature spoons with level capacities of one-tenth cubic centimeter or less;
 
 
 52
 (7) chamber pipes;
 
 
 53
 (8) carburetor pipes;
 
 
 54
 (9) electric pipes;
 
 
 55
 (10) air-driven pipes;
 
 
 56
 (11) chillums;
 
 
 57
 (12) bongs;
 
 
 58
 (13) ice pipes or chillers;
 
 
 59
 (14) wired cigarette papers; or
 
 
 60
 (15) cocaine freebase kits.
 
 
 61
 (e) Matters considered in determination of what constitutes drug paraphernalia
 
 
 62
 In determining whether an item constitutes drug paraphernalia, in addition to all other logically relevant factors, the following may be considered:
 
 
 63
 (1) instructions, oral or written, provided with the item concerning its use;
 
 
 64
 (2) descriptive materials accompanying the item which explain or depict its use;
 
 
 65
 (3) national and local advertising concerning its use;
 
 
 66
 (4) the manner in which the item is displayed for sale;
 
 
 67
 (5) whether the owner, or anyone in control of the item, is a legitimate supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products;
 
 
 68
 (6) direct or circumstantial evidence of the ratio of sales of the item(s) to the total sales of the business enterprise;
 
 
 69
 (7) the existence and scope of legitimate uses of the item in the community; and
 
 
 70
 (8) expert testimony concerning its use.
 
 
 71
 (f) Exemptions
 
 
 72
 This section shall not apply to--
 
 
 73
 (1) any person authorized by local, State, or Federal law to manufacture, possess, or distribute such items; or
 
 
 74
 (2) any item that, in the normal lawful course of business, is imported, exported, transported, or sold through the mail or by any other means, and primarily intended for use with tobacco products, including any pipe, paper, or accessory.
 
 
 
 [1]
 See Appendix for the full text of the drug paraphernalia statute